UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHAUN BRAME,  )
             )
    Plaintiff, )        Case No. 09 C 3966
             )
    v.       )        Judge Suzanne B. Conlon
             )
THOMAS J. DART, et al., )
             )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shaun Brame, filed suit, *pro se*, against Cook County Sheriff Tom Dart, Cook County Corrections Executive Director Salvador Godinez, Executive Director of Cermak Health Services Avery Hart, Dr. Ann Dunlap, Superintendent Andrews, and Correctional Officer Phillips. Plaintiff alleges that he was subject to deliberate indifference to a serious medical condition while incarcerated at the Cook County Jail. His claim of deliberate indifference is contained in Count I of his complaint and centers around the decision of Defendant Dr. Dunlap to discontinue his prescription for Dilantin. *See* Plaintiff's complaint. In Count II of his complaint, Plaintiff alleges that a forty-five minute delay in getting him to Cermak Health Services by unserved Defendant Phillips constituted deliberate indifference, and he further alleges that an official custom or policy existed of failing to train medical and correctional staff at the Cook County Jail to deal with the medical needs of the pre-trial detainees housed there.

Presently pending before the Court is Defendants Dart, Godinez, Andrews, Dunlap, and Hart's motion for summary judgment. Defendants have raised two arguments as to why they believe they are entitled to summary judgment: 1) Defendants were not deliberately indifferent to Plaintiff's serious medical needs; and 2) there was no custom and policy in place of failing to

train medical and correctional staff to treat inmates' serious medical conditions. For the reasons stated herein, the motion for summary judgment is granted.

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, with admissible evidence, that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

When Defendants filed their motion for summary judgment, they included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982); and Local Rule 56.2. This notice clearly sets out the requirements of this Court's Local Rule 56.1. In particular, the notice explains that Plaintiff's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain:
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b). The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced"); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir.1994). Despite being given this notice, Plaintiff failed to adequately respond to Defendants' Rule 56.1 statement of facts. *See* "Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1(b) Part A", [#67]. Consequently, Defendants' facts contained in their Rule 56.1 statement, to the extent that they are material and adequately supported by the record, are deemed admitted.

Plaintiff also filed his own statement of facts, and while he references documents, he did not attach any documents or otherwise timely submit them to the Court. *See* "Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1(b) Part B", [#68]. There are some

references to the record provided to the Court by the Defendants in their statement of facts, and to the extent that the Court has the record available, and the statement of fact is material, the Court will consider it in deciding the motion. However, those statements of fact without citation or any record supporting them will be disregarded because they do not satisfy the requirements of Local Rule 56.1  See Ammons, 368 F.3d at 817.

Because Plaintiff is proceeding *pro se*, the Court will consider the factual assertions he makes in his response, but only to the extent that Plaintiff could properly testify about the matters at trial – that is, only with respect to those facts within Plaintiff's personal knowledge. See FED. R. EVID. 602. This inherently excludes the "Declarations of Absentee Witnesses" filed by Plaintiff. [##71, 72, and 73]. These documents are statements written by Plaintiff, purporting to be statements that other inmates would testify to, if called. They are either unsigned, or signed by Plaintiff, not by the purported affiant. In essence, they are merely additional statements by Plaintiff. As they purport to be declarations of what other persons would testify to at trial, are not within the knowledge of what *Plaintiff* could testify to at trial, and are hearsay under FED. R. EVID. 801(c), they will not be considered by the Court.

## FACTS

The following facts are taken from Defendants' Rule 56.1 statement, from the record attached to Defendants Rule 56.1 statement, from Plaintiff's complaint, and from Plaintiff's response to Defendants' motion for summary judgment where Plaintiff made adequate citation to the record. On May 25, 2007, Plaintiff was admitted to the Cook County Department of Corrections ("CCDOC"). (Defendants' Exhibit II, Plaintiff's deposition p. 16). On May 25, 2007, Plaintiff signed his medical intake form; said form indicated that Plaintiff had no medical

4

history of "seizures/epilepsy/fits." (Defendants' Exhibit II, Plaintiff's deposition, p. 33 & exhibit #1).

Plaintiff was prescribed the prescription drug Dilantin by medical personnel from Cermak Health Services on or about May 25 or 26, 2007. (Defendants' Exhibit II, Plaintiff's deposition p. 16). Dilantin is a powerful prescription medication used to treat seizures and seizure disorders which may cause several side effects. (Defendants' Exhibit V, affidavit of Dr. Dunlap, p. 2). The side effects of Dilantin include gingival hyperplasia, which is the over-growth of the gum tissue surrounding the teeth. (Defendants' Exhibit V, affidavit of Dr. Dunlap, p. 2). Tenderness, swelling or bleeding of the gums is often associated with gingival hyperplasia. (Defendants' Exhibit V, affidavit of Dr. Dunlap, p. 2). Other side-effects associated with Dilantin include severe liver disease, bone marrow dysfunction and allergic side effects which can cause death. (Defendants' Exhibit V, affidavit of Dr. Dunlap, p. 2).

Plaintiff was seen and treated by Cermak medical personnel on June 22, 2007. (Defendants' Exhibit II, Plaintiff's deposition p. 21). Plaintiff was seen and treated by Cermak medical personnel in July 2007. (Defendants' Exhibit I, Plaintiff's complaint p. 9, Defendants' Exhibit II, Plaintiff's deposition p.20). Plaintiff was seen and treated by Cermak medical personnel on November 1, 2007, and had his Dilantin prescription refilled on that same day. (Defendants' Exhibit I, Plaintiff's complaint p. 9, Defendants' Exhibit II, Plaintiff's deposition p. 26-27). Plaintiff continued to receive Dilantin from May 25 or 26, 2007, until the second week of November 2007, specifically November 10, 2007. As of the second week of November 2007, Plaintiff, in addition to his Dilantin, was receiving four to five other prescription medications, including Neurontin for his back, Risperidone for hallucinations and hearing voices and Prozac for depression. (Defendants' Exhibit II, Plaintiff's deposition, p. 39).

Dr. Ann Dunlap is a medical doctor licensed to practice medicine in the state of Illinois. (Defendants' Exhibit V, affidavit of Dr. Dunlap, p.1). Dr. Dunlap examined Plaintiff on November 10, 2007. (Defendants' Exhibit I, Plaintiff's complaint p. 9-10, Defendants' Exhibit II, Plaintiff's deposition p. 28-29, exhibit # 4 p. 2, Defendants' Exhibit V, affidavit of Dr. Dunlap, p.1).

On examining Plaintiff and reviewing his medical file, Defendant Dunlap determined that he was suffering side effects associated with Dilantin, including gingival hyperplasia (overgrowth of the gums tissue surrounding the teeth, tenderness, swelling or bleeding of the gums and loose teeth). (*See* Defendants' statement of uncontested facts #18 and supporting affidavit of Dr. Ann Dunlap, and Defendants' Exhibit II, Plaintiff's deposition, p. 25). Plaintiff had been treated for the above-mentioned Dilantin side-effects by Cermak medical personnel and Plaintiff discussed and complained about said side-effects with Cermak medical personnel. (Defendants' Exhibit II, Plaintiff's Deposition p. 37, 38, Defendants' Exhibit IV, affidavit of Dr. Dunlap, p. 3). Dilantin is also associated with severe liver disease, bone marrow dysfunction and allergic side effects which can lead to death. (*See* Defendants' Exhibit V, affidavit of Dr. Ann Dunlap).

According to Dr. Dunlap's review of Plaintiff's medical file, his history of seizure disorder was entirely self-reported. *Id.* Additionally, although Plaintiff claimed to have been treated at an outside hospital for his seizure disorder and to have been prescribed Dilantin that he received from Walgreens pharmacy, the records in his medical file indicated that he was not treated at an outside hospital and he did not receive Dilantin from Walgreens pharmacy. *Id.* During Plaintiff's earlier incarceration in Cook County Jail, the records indicated he did not receive a prescription for Dilantin. *Id.*

Based on Dr. Dunlap's evaluation of Plaintiff, and her concern for his well-being based upon his report of side-effects, the other potential side effects associated with Dilantin, and the lack of a medical history other that Plaintiff's contention that he suffered from a seizure disorder, she discontinued his Dilantin prescription. *Id. and see* Defendants' statement of uncontested facts #16.

Plaintiff arrived at the Cermak Health Services emergency room on November 24, 2007, at approximately 5:35 p.m. after complaining of having suffered a seizure in his cell. (Defendants' Exhibit II, Plaintiff's deposition, exhibit # 4, p. 1-2). Plaintiff remained at the Cermak Health Services emergency room until approximately 9:10 p.m. (Defendants' Exhibit II, Plaintiff's deposition, exhibit # 4, p. 1). Plaintiff was prescribed Dilantin by Cermak medical personnel on November 24, 2007, subsequent to Plaintiff's visit to the Cermak emergency room. (Defendants' Exhibit I, Plaintiff's complaint, p. 11, Defendants' Exhibit II, Plaintiff's deposition, p. 72).

Subsequent to November of 2007, Plaintiff received medical treatment from Cermak Health Services for various medical and psychological issues, received x-rays and continued to receive numerous prescriptions (Defendants' Exhibit II, Plaintiff's deposition p. 55-57). Subsequent to November 2007, Plaintiff received medical treatment from numerous other Doctors at Cermak Health Services. (Defendants' Exhibit II, Plaintiff's Deposition p. 50). On one of those occasions, subsequent to November 2007, Plaintiff received medical treatment after suffering an injury playing basketball. (Defendants' Exhibit II, Plaintiff's Deposition p. 52). Plaintiff was prescribed a cane and two crutches for the above-mentioned injury Plaintiff suffered while playing basketball. (Defendants' Exhibit II, Plaintiff's Deposition p. 52). When being treated, subsequent to November 2007, Plaintiff on several occasions refused

to see Dr. Dunlap for purposes of receiving medical attention. (Defendants' Exhibit II, Plaintiff's Deposition p. 51).

Thomas Dart is the Sheriff of Cook County. (Defendants' Exhibit I, Plaintiff complaint, p.3, Defendants' Exhibit II, Plaintiff's deposition, p. 81). Plaintiff has never met Thomas Dart. (Defendants' Exhibit II, Plaintiff's deposition, p. 81). Salvadore Godinez is the Executive Director of the Cook County Department of Corrections. (Defendants' Exhibit I, Plaintiff's complaint, p. 3, Defendants' Exhibit II, Plaintiff's deposition, p. 89). Plaintiff has never met Salvadore Godinez. (Defendants' Exhibit II, Plaintiff's deposition, p. 89). Superintendent Andrews was the Superintendent of Division 10 of the CCDOC (Defendants' Exhibit II, Plaintiff's deposition, p. 91). Executive Director Hart is the head of Cermak Medical Services. (Defendants' Exhibit II, Plaintiff's deposition, p. 95). Plaintiff has never met Executive Director Hart. (Defendants' Exhibit II, Plaintiff's deposition, p. 95).

Plaintiff is unable to name any specific policy, custom or practice of Sheriff Dart, Executive Director Godinez, Superintendent Andrews or Executive Director Hart to obstruct, discourage or prevent medical care to pre-trial detainees who need medical treatment. (Defendants' Exhibit II, plaintiff's deposition, p. 96-98). At the time of Plaintiff's incarceration, CCDOC General Orders 12.1, 12.2, 12.3, 12.4, 12.5, 12.6, 12.7, 12.8 and 12.9, regarding Medical and Health Care Services were in full force and effect. (Defendants' Exhibit III). At the time of Plaintiff's incarceration, Cermak Health Services of Cook County Policies and Procedures regarding Medical Autonomy, Staffing and Continuity of Care were in full force and effect. (Defendants' Exhibit IV).

## ANALYSIS

### I. Defendants were not Deliberately Indifferent to Plaintiff's Serious Medical Condition.

Plaintiff alleges Defendants were deliberately indifferent to a serious medical condition while he was housed at Cook County Jail. More specifically, he alleges that Dr. Dunlap was deliberately indifferent when she discontinued his prescription for Dilantin on November 10, 2007. *See* Plaintiff's complaint, Count I. He also alleges deliberate indifference as to an unserved Defendant, Correctional Officer Phillips, because when he had a seizure on November 24, 2007, it took the correctional officer forty-five minutes to an hour to get him medical attention at Cermak Health Services. *See* Plaintiff's complaint, Count II. Plaintiff further alleges that Tom Dart, Salvadore Godinez, Avery Hart, and Superintendent Andrews failed a ensure that proper guidelines, policies and procedures were followed with respect to hiring and training medical staff to treat inmates' medical needs.

Because Plaintiff was a pretrial detainee during the relevant time period, his conditions of confinement claim must be analyzed under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520 (1979).[1] Since "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law[,]" the Court inquires whether the alleged conditions amount to punishment of the detainee. *Id* at 535. However, conditions-of-confinement claims by pretrial detainees are analyzed under the same standards

---

[1] If Plaintiff's allegations took place before he was given a hearing pursuant to *Gerstein v. Pugh*, 420 U.S. 103 (1975), then his allegations must be analyzed under the Fourth Amendment. "[T]he protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, [the Fourteenth Amendment's] due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction". *See Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). However, in the present case, under either the Fourth Amendment or Fourteenth Amendment Due Process Clause, the result would be the same with respect to the whether there is a material question of fact with respect to deliberate indifference.

9

that apply to convicted prisoners under the Eighth Amendment. *See, e.g., Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999).

Though some of the Seventh Circuit's decisions suggest that the Fourteenth Amendment might conceivably provide a greater level of protection to pretrial detainees than the Eighth Amendment provides to convicted prisoners, *see, e.g., Sanders v. Sheahan*, 198 F.3d 626, 628 (7th Cir. 1999) (stating that "the protections extended to pretrial detainees ... are at least as extensive as the protections ... extended to prisoners"), in the particular circumstances of this case, the standard makes no practical difference. Accordingly, the Court will analyze Plaintiff's claims under the standard that applies in Eighth Amendment conditions-of-confinement cases.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligence in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 106; *see also Jones v. Simek*, 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied*, 519 U.S. 897, 117 S. Ct. 244, 136 L. Ed. 2d 173 (1996). An official is deliberately indifferent when he acts or fails to act "despite his knowledge of a substantial risk of serious harm" to the inmate. *Farmer*, at 842.

A prison official violates the Eighth Amendment only when: (1) the Plaintiff establishes an objectively serious injury or medical need; and (2) that Defendants knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Plaintiffs' Count I is his claim of medical deliberate indifference, and all of the allegations involve his treatment by Defendant Dr.

Ann Dunlap, and more specifically, her decision to discontinue his prescription for Dilantin. *See* Plaintiff's Complaint, Count I. The Defendants argue in their motion that, with respect to both prongs of the test, that there is no question of material fact and Defendants are entitled to judgment. The Court will address each one in turn.

### A. There is a Material Question of Fact as to Whether Plaintiff Has an Objectively Serious Medical Condition.

An objectively serious medical condition, for purposes of determining deliberate indifference is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Chapman*, at 845; *citing Zentmyer v. Kendall County*, 220 F. 3d 805, 810 (7th Cir. 2000); *quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff pled in his complaint that he suffers from epilepsy. *See* Plaintiff's complaint, p. 9, ¶27. He further alleges and Defendants state as fact that while he was incarcerated within the Cook County Department of Corrections, from May 25 or 26, 2007, to November 10, 2007, he was prescribed Dilantin. *See* Plaintiff's complaint, pp. 9-10, ¶¶28-30 *and see* Defendants' statement of uncontested facts #16. Dilantin is a powerful medication used to treat seizures and seizure disorders. *See* Defendants' statement of uncontested facts #5.

On November 10, 2007, Defendant, Dr. Dunlap, discontinued Plaintiff's prescription for Dilantin. *See* Plaintiff's complaint, p. 10, ¶ 30, *and see* Defendants' statement of uncontested facts, #16. On November 24, 2007, Plaintiff had a seizure in his cell. *See* Plaintiff's complaint, p. 10, ¶32, *and see* Defendants' statement of uncontested facts, #22. As a result of the seizure, Plaintiff fell and knocked a tooth loose. *See* Plaintiff's complaint, p. 10, ¶ 32.

Seizure disorders have been held to constitute an objectively serious medical condition. *See Knox v. Powers*, (Case No. 09 C 341) 2009 U.S.Dist. LEXIS *7 (S.D. Ill.)(Herndon, J.) The

Court in *Knox* held that symptoms of seizures may lead to injury resulting from a fall or striking an object while convulsing. Such seizures had the possibility of leading to such injuries, and therefore can be held to be sufficiently serious to raise a claim of deliberate indifference. *Id*. While *Knox* is not controlling it is both persuasive and factually directly on point. Plaintiff alleges he was epileptic, that Dr. Dunlap took him off of Dilantin, he subsequently had a seizure, fell and was injured. Consequently, according to the record, Defendants have failed to establish no material question of fact with respect to the objective component of deliberate indifference.

**B. Plaintiff Has Failed to Establish the Subjective Component of Deliberate Indifference.**

In order to establish the second element of deliberate indifference, Plaintiff must establish that the Defendants acted or failed to act with a sufficiently culpable state of mind – one of 'deliberate indifference' to inmate health or safety. *Davis v. Carter*, 452 F.3d 686, 696 (7th Cir. 2006). Deliberate indifference requires something more than negligence, but need not be a purposeful or knowing infliction of harm. *Id*. Deliberate indifference requires that a prison official subjectively know of and disregard a substantial risk of harm. *Id*. "'Deliberate indifference' is simply a synonym for intentional or reckless conduct," and can be established indirectly through circumstantial evidence. *Id. citing Foelker v. Outagamie County*, 394 F.3d 510, 513 (7th Cir. 2005). In examining prisoner claims of deliberate indifference, the court considers the totality of the inmate's care. *See Gutierrez*, at 1374. (finding no deliberate indifference where the inmate "repeatedly received treatment over [a] ten-month period and . . . at most he experienced an isolated occasion or two where he did not receive prompt treatment").

Plaintiff admitted in his deposition to at least five occurrences of medical treatment for various ailments between May 25, 2007, and November 24, 2007. *See* Defendants' statement of

uncontested facts ##13-16, and Plaintiff's deposition, attached to Defendants' statement of uncontested facts as Exhibit II, pp. 17, 20, 21, and 28-29. Plaintiff was prescribed Dilantin between May 25, 2007, and November 10, 2007. *See* Plaintiff's complaint, p. 9-10 ¶¶27-32, *and see* Defendants' statement of uncontested facts #16. Dilantin is a powerful medication used to treat seizures and seizure disorders. *See* Defendants' statement of uncontested facts #5. During the relevant time period, Plaintiff was also being prescribed four to five other medications, including: Neurontin for back pain, Risperidone for hallucinations and hearing voices, and Prozac for depression. *See* Defendants' statement of uncontested facts #20, and Defendants' Exhibit II, Plaintiff's deposition p. 39.

On November 10, 2007, Defendant Dr. Dunlap examined Plaintiff. *See* Plaintiff's complaint p. 9-10, ¶30 *and see* Defendants' statement of uncontested facts #16. On examining Plaintiff and reviewing his medical file, Defendant Dunlap determined that he was suffering side effects associated with Dilantin, including gingival hyperplasia (over-growth of the gums tissue surrounding the teeth, tenderness, swelling or bleeding of the gums and loose teeth). *See* Defendants' statement of uncontested facts #18 and supporting affidavit of Dr. Ann Dunlap). Plaintiff had been treated for the side effects at Cermak Medical Services, and discussed his concern about them with Dr. Dunlap. *See* Defendants' statement of uncontested facts #19, and Defendants' Exhibit II, Plaintiff's deposition pp. 38 and 39. Dilantin is also associated with severe liver disease, bone marrow dysfunction and allergic side effects which can lead to death. *See* Defendants' Exhibit V, affidavit of Dr. Ann Dunlap.

According to Dr. Dunlap's review of Plaintiff's medical file, his history of seizure disorder was entirely self-reported. *Id.* Additionally, although Plaintiff claimed to have been treated at an outside hospital for his seizure disorder and to have been prescribed Dilantin that

13

he received from Walgreens pharmacy, the records in his medical file indicated that he was not treated at an outside hospital and he did not receive Dilantin from Walgreens pharmacy. *Id.* During Plaintiff's earlier incarceration in Cook County Jail, the records indicated he did not receive a prescription for Dilantin. *Id.*

Based on Dr. Dunlap's evaluation of Plaintiff, and her concern for his well being based upon his report of side-effects, the other potential side effects associated with Dilantin, and the lack of a medical history other that Plaintiff's contention that he suffered from a seizure disorder, she discontinued his Dilantin prescription. *Id. and see* Defendants' statement of uncontested facts #16. Plaintiff suffered from a seizure on November 24, 2010, and fell, loosening a tooth. *See* Plaintiff's complaint, p. 10, ¶32, *and see* Defendants' statement of uncontested facts, #22. Cermak Health Services prescribed Dilantin for Plaintiff after his seizure on November 24, 2007. *See* Plaintiff's complaint, p. 10, ¶32, *and see* Defendants' statement of uncontested facts, #24.

Defendant, Dr. Dunlap had a valid medical concern about the side effects of Dilantin and whether he needed to be prescribed the medication at all. Mere disagreement with a physician's treatment likewise does not constitute an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Medical malpractice in failing to properly diagnose or treat a condition is not sufficient for an Eighth Amendment violation. *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir.1996).

While Plaintiff might be able to argue that the decision to take him off of Dilantin was medical malpractice, he can not establish deliberate indifference. The totality of care he received from the time he entered Cook County Jail on May 25, 2007, until he was re-prescribed Dilantin after his seizure on November 24, 2007, indicates that Defendants, including Defendant

Dunlap, provided Plaintiff with constitutionally adequate health care. More specifically, he establishes no deliberate indifference as to Defendant Dunlap. In her medical judgment, supported by examining Plaintiff and by reviewing his medical file, his prescription for Dilantin needed to be discontinued. She was not indifferent. When he had his seizure two weeks later, he was placed back on Dilantin within hours. As he establishes no deliberate indifference as to the medical care he received from Dr. Dunlap between May 25, 2007, and November 24, 2007, his claims fail.

### C. Plaintiff cannot Establish Deliberate Indifference as to Defendant Phillips.

Plaintiff alleges in Count II of his complaint that an unserved Defendant, Correctional Officer Phillips, was deliberately indifferent because it took forty-five minutes to an hour for Plaintiff to receive medical care after he had his seizure on November 24, 2007. Defendants' motion does not address this allegation because Plaintiff never successfully served Defendant Phillips. As Phillips was never served and this case was filed on June 30, 2009, Plaintiff is well outside the 120 day time limit set by rule to serve this Defendant. *See* FED. R. CIV. P. 4(m)

Even if Plaintiff had successfully served Defendant Phillips, he has failed to state a cause of action against him as a matter of law. "[A] prison official may evidence deliberate indifference by failing to treat or delaying the treatment of a serious medical need." *Langston v. Peters*, 100 F.3d 1235, 1241 (7th Cir. 1996) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). For liability to exist the medical need must be objectively serious and the prison officer's reaction must have amounted to deliberate indifference, *i.e.* a conscious disregard of a known serious risk of harm. *Langston*, 100 F.3d at 1241. In *Langston*, an inmate who had been raped was delayed one hour before getting medical attention. The Seventh Circuit held that such a delay was not unreasonably long, noting that the court had previously found a delay of two

hours for an x-ray and examination for a broken bone not unreasonable. *Langston*, 100 F.3d at 1241 (*citing Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Plaintiff's situation was much like the one described in *Langston* and *Murphy*.

Additionally, although Plaintiff alleges injury in this case, the alleged injury occurred when he had his seizure. He alleges no further injury as a result of the forty-five minutes to an hour that it took Defendant Phillips to provide him medical care by transporting him to Cermak Health Services. One of the requirements for successfully pleading deliberate indifference is that the indifference must have caused the plaintiff some injury. *Gayton v. McCoy*, (No. 08 C 2187) 2010 U.S. App. LEXIS 1937 *24(7th Cir., January 28, 2010). As Plaintiff has not alleged any such injury, his claim against Defendant Phillips is dismissed.

**II.   As Plaintiff has established no Deliberate Indifference, his *Monell* Claim fails.**

Plaintiff's Count II amounts to a claim pursuant to *Monell v. Dep't. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978) for an alleged custom and policy by Defendants Dart, Godinez, Andrews and Hart (the supervisory officials) of failing to ensure that proper guidelines, policies and procedures were followed with respect to hiring and training medical staff to treat inmates' medical needs. *See* Plaintiff's complaint, Count II. As Plaintiff has failed to establish deliberate indifference as to the Defendants individually, and his *Monell* claim is entirely dependent upon the underlying claim, it is dismissed, as well.

One additional note, with respect to Plaintiff's *Monell* claim. He cites to the U.S. Department of Justice Report finding inadequate medical care being provided to inmates at Cook County Jail. *See* Plaintiff's response to Defendants' motion for summary judgment [#76] p. 21. Plaintiff attached the report to a pleading he filed over two months after this motion for summary judgment was fully briefed [#86]. While it is technically outside the materials the

16

Court is required to consider, the Court has reviewed it and determined that for purposes of granting judgment to Defendants, it does not create a question of fact requiring the Court to deny Defendants' motion. The report made findings generally, whereas the evidence in this case establishes that, specifically, with respect to Plaintiff, he received constitutionally adequate medical care during the relevant time period. As it is clear from the evidence that Plaintiff was provided constitutionally adequate medical care from Defendants his *Monell* claim against supervisory officials fails and Defendants are entitled to judgment.

## CONCLUSION

For the foregoing reasons, Defendants Dart, Godinez, Hart, Dunlap, and Andrews' motion for summary judgment is granted. Additionally Plaintiff's claims against Correctional Officer Phillips are dismissed pursuant to FED. R. CIV. P. 4(m) and for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6).

Dated: December 20, 2010

Suzanne B. Conlon
U.S. District Court Judge